UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Jason Ellis Smith,<br><br>Defendant. | Nos. 2:98-cr-00009-KJM-CKD<br>2:96-cr-00450-KJM<br><br>ORDER |
|---|---|

Jason Ellis Smith moves to reduce his prison sentence to time served under 18 U.S.C. § 3582(c)(1)(A). He argues he is at risk of infection and severe disease from COVID-19, and he contends recent changes to federal firearms laws make his sentence unjustly lengthy and harsh. Although the court concludes that Smith's risk of severe COVID-19 is not an "extraordinary and compelling" reason under § 3582(c)(1)(A)(i), the circumstances of his sentence and offense warrant a reduction under that section and the factors of § 3553(a). **His motion is granted**.

I.     **BACKGROUND**

When Smith was twenty-four, he was part of two armed credit union robberies. Mot. at 2, 7, ECF No. 129; Opp'n at 2–3, ECF No. 133.[1] He was charged in both cases with robbery under 18 U.S.C. § 2113 and with the use of a firearm under 18 U.S.C. § 924(c).

---

[1] Except as noted, this order cites documents filed in Case No. 98-cr-0009.

1

Mot. at 2; Opp'n at 3–4.  In the first case, he pled guilty to both charges under a plea agreement. *See* No. 96-cr-450, ECF No. 45.  Another judge of this court imposed a 51-month sentence for the robbery conviction and a five-year sentence for the firearm conviction.  Mot. at 2 & Mot. Ex. 1, ECF No. 129-1 (reproducing the Judgment); Opp'n at 3–4.  Smith was convicted of the second set of robbery and firearms charges after a jury trial.  Verdict, ECF No. 44.  The judge imposed a 100-month sentence for the robbery conviction and a twenty-year sentence for the firearms conviction.  *See* Mot. at 2 & Mot. Ex. 2, ECF No. 129-2 (reproducing the Judgment); Opp'n at 4.

The judgment in the second case set the robbery sentences to run concurrently.  *See* Judgment at 2.  The firearms sentences, however, were to run consecutively, because at the time, § 924(c) not only imposed a mandatory twenty-year minimum sentence for a second conviction, but also required the second sentence to run consecutively to the first.  *See generally Deal v. United States*, 508 U.S. 129 (1993), *superseded by statute as stated in United States v. Davis*, 139 S. Ct. 2319, 2324 n.1 (2019).  This meant Smith was sentenced to a term of more than 33 years in prison.  He will also serve a five-year term of supervised release.  *See* Judgment at 3.  According to the Bureau of Prisons's records, Smith's projected release date is in October 2022.  *See* Inmate Data at 1 (Apr. 24, 2021), Opp'n Ex. 1, ECF No. 133-1.  He will then be 51 years old.

Smith is serving his sentence in USP Lompoc.  Opp'n at 4.  He has served more than 80 percent of the full term and more than 90 percent of his statutory term, i.e., after reductions for credits.  *Id.*  Since he entered the prison, he has completed his GED and has taken hundreds of hours of math, writing, financial literacy and career courses.  *See* Inmate Educ. Data, Mot. Ex. 4 (provisionally sealed[2]).  He has also completed work assignments well and has paid his special assessment and restitution.  *See* Summary Rep. at 1, 4, Mot. Ex. 5 (provisionally sealed).  He has a short disciplinary history of minor offenses, none violent and none since 2012, although about sixteen years ago, officers found a lock in a sock during a random search of Smith's cell.  *See generally* Inmate Disc. Data, Mot. Ex. 4.  Smith said that he had used the lock to crush soap to make laundry detergent.  *Id.* at 4.  Staff did not find this explanation sufficient to exonerate him

---

[2] *See* Order (May 5, 2021), ECF No. 135 (provisionally sealing this and other exhibits attached to Smith's motion pending a renewed request to file redacted copies).

because a lock in a sock is a common makeshift weapon. *See id.* He lost time credits and spent two months in disciplinary segregation. *Id.* But this offense appears not to have caused the Bureau any concern about his success when released; it has recommended that he finish the entire last year of his custodial sentence in a halfway house. *See* Summary Rep. at 4; Mot. at 12.

Smith now moves to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A). He argues his height and weight put him very near the ranges the CDC has found to increase the risk of severe COVID-19. *See* Mot. at 9–10. He argues similarly that his race puts him at greater risk of severe disease if he contracts COVID-19; he is Black. *See id.* at 10–11. And finally, he argues his sentence is harsh and drastic and would be much lower if imposed today. *See* Mot. at 6–9 (citing the First Step Act § 403(a), Pub. L. 115-391, 132 Stat. 5222 (2018)). He contends these circumstances, taken together, make for "extraordinary and compelling reasons" justifying reducing his sentence to time served under § 3582(c)(1)(A). The government opposes the motion. It argues Smith is not at risk of severe disease, among other reasons because at the time of the government's briefing he had already received his first dose of the coronavirus vaccine, and it argues the sentencing factors in 18 U.S.C. § 3553(a) weigh against a reduction. Opp'n at 12–13. The government also argues the sentencing changes passed in 2018 were expressly nonretroactive, so they cannot serve as the basis for a motion under § 3582(c)(1)(A). *See* Opp'n at 7–10. The motion is fully briefed and was submitted without oral argument. *See* Reply, ECF No. 139, Minute Order, ECF No. 132.

## II. LEGAL STANDARD

The district court that imposed a custodial sentence can modify the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). The defendant must first exhaust administrative remedies. *Id.* § 3582(c)(1)(A). If a defendant has exhausted administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons warrant" the requested reduction. *Id.* § 3582(c)(1)(A)(i). Second, the court must consider the same factors that were applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable. *See id.* § 3582(c)(1)(A).

/////

Section 3582 further requires a reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody. *See* U.S.S.G. § 1B1.13 (last amended November 1, 2018). The Ninth Circuit recently clarified that although this policy statement "may inform a district court's discretion," it is "not binding" because it "does not reference motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 800, 802 (9th Cir. 2021) (per curiam).

Although the Ninth Circuit has not decided which party bears the burden in the context of a motion for compassionate under § 3582(c) after the First Step Act, "district courts that have done so," including this one, "agree that the burden remains with the defendant." *United States v. Becerra*, No. 18-0080, 2021 WL 535432, at *3 (E.D. Cal. Feb. 12, 2021).

## III.    ANALYSIS

The parties agree Smith has exhausted his administrative remedies. *See* Mot. at 4; Opp'n at 5. The court therefore begins with Smith's argument that he is at risk of severe COVID-19 within USP Lompoc.

### A.    The Risk of Severe COVID-19

Many federal district courts, including this court, have held over the last year that defendants can demonstrate "extraordinary and compelling reasons" for compassionate release under § 3582(c)(1)(A)(i) if they show (1) their health conditions put them at an increased risk of severe COVID-19 and (2) they are at risk of infection because their facility is currently suffering from a COVID-19 outbreak or is at risk of an outbreak, for example because it is a congregate living facility in which inmates and staff cannot consistently maintain safe physical distances. *See, e.g.*, *United States v. Terraciano*, 492 F. Supp. 3d 1082, 1085–86 (E.D. Cal. 2020). Many courts have also found that people who have a body mass index within the ranges defined as "overweight" or "obese" are at greater risk of severe COVID-19. *See, e.g.*, *id.* at 1086 (finding that a body mass index "at or near the level described as 'obese'" can increase a person's risk of hospitalization and death); *United States v. Richardson*, No. 17-00048, 2020 WL 3402410, at *3

4

(E.D. Cal. June 19, 2020) (finding "obesity alone" places a defendant "at higher risk of COVID-19 complications"). According to the CDC, "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI," and being overweight can make severe illness from COVID-19 more likely. U.S. Ctrs. for Disease Control & Prevention, "People with Certain Medical Conditions" (Apr. 29, 2021).[3]

These decisions and authorities would support Smith's claim that he is at greater risk of severe COVID-19 if he could show his body mass index were within the "overweight" range or higher. The government argues he has not; Smith has not submitted recent evidence of his height and weight. The court assumes without deciding Smith could supply the necessary proof. As explained below, even if Smith's body mass index is within the "overweight" or "obese" range, the court would not grant his motion on the basis of his greater risk of severe COVID-19.

Smith's medical records show he recently received his first dose of the Moderna COVID-19 vaccine, and he has agreed to receive the second dose, which he should receive shortly. *See* Opp'n Ex. 2, ECF No. 138 (filed under seal). The "vast majority" of federal courts have found that vaccination against COVID-19 changes the calculus for defendants who claim that their medical conditions and incarceration are "extraordinary and compelling reasons" to grant a motion under § 3582(c)(1)(A). *United States v. Harris*, No. 05-0061, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021). The court agrees for two reasons.

First, according to all available evidence, "[a]lthough vaccines are not one hundred percent effective," they are "'highly effective at protecting vaccinated people against symptomatic and severe COVID-19.'" *United States v. Singh*, No. 15-00028, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (quoting a previous version of Ctrs. for Disease Control & Prevention, "Coronavirus Disease 2019, Vaccines, Interim Public Health Recommendation for

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity, last visited May 10, 2021. The court takes judicial notice of this information. *See, e.g.*, *Dubrin v. Cty. of San Bernardino*, No. 15-589, 2017 WL 8940181, at *21 n.14 (C.D. Cal. Sept. 7, 2017), *report and recommendation adopted*, 2017 WL 4339645 (C.D. Cal. Sept. 29, 2017).

Fully Vaccinated People" (Apr. 27, 2021)).[4] The Moderna vaccine, which Smith is receiving, was found to be "94.1% effective at preventing laboratory-confirmed COVID-19 illness in people who received two doses" and who, like Smith, "had no evidence of being previously infected." U.S. Ctrs. for Disease Control & Prevention, "Moderna COVID-19 Vaccine Overview and Safety" (Apr. 5, 2021).[5] It was highly effective in clinical trials for men and women of many ages, races, and ethnicities. *See id.* Those who received the Moderna vaccine were much less likely to be hospitalized. U.S. Ctrs. for Disease Control & Prevention, "The Advisory Committee on Immunization Practices' Interim Recommendation for Use of Moderna COVID-19 Vaccine— United States, December 2020" (Jan. 1, 2021).[6] In fact, "during Moderna's clinical trial, not a single person who received the vaccine developed severe COVID-19 symptoms." *Singh*, 2021 WL 928740 at *3 (citing Lindsay R. Baden, et al., "Efficacy and Safety of mRNA-1273 SARS-CoV-2 Vaccine," 384 N.E. J. Med. 403–16 (Feb. 4, 2021)[7]). In short, according to the CDC, authorized vaccines, including the Moderna vaccine, greatly reduce the risk of severe illness, hospitalization, and death.

Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of "extraordinary and compelling reasons" based on a high risk of infection.[8] This is also true of defendants who have received only one vaccination

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html, last visited May 10, 2021.

[5] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html, last visited May 10, 2021.

[6] https://www.cdc.gov/mmwr/volumes/69/wr/mm695152e1.htm?s_cid=mm695152e1_w, last visited May 10, 2021.

[7] https://www.nejm.org/doi/full/10.1056/NEJMoa2035389, last visited May 10, 2021.

[8] *See, e.g.*, *Harris*, 2021 WL 1516012 at *2; *United States v. Gomez-Vega*, No. 19-1382, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021); *United States v. Baeza-Vargas*, No. 10-00448, 2021 WL 1250349, at *3 (D. Ariz. Apr. 5, 2021); *United States v. Kariblghossian*, No. 13-00318, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021); *United States v. Brown*, No. 16-436, 2021 WL 1154207, at *3 (S.D.N.Y. Mar. 26, 2021); *United States v. Stiver*, No. 17-0064, 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021); *United States v. Williams*, No. 01-0012, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021); *Singh*, 2021 WL 928740, at *2–4; *United States v. McQuarrie*, No. 16-20499, 2021 WL 843177, at *5 (E.D. Mich. Mar. 5, 2021); *United States v. Shepard*, No. 07-0085, 2021 WL 848720, at *5 (D.D.C. Mar. 4, 2021); *United States v.*

dose of a two-dose regime. *See, e.g.*, *Brown*, 2021 WL 1154207, at *3 ("Because [the defendant] will soon be fully vaccinated, any risk that he may become severely ill from COVID-19 will be reduced significantly."); *Shepard*, 2021 WL 848720, at *5 ("Given that [the defendant] received his first dose of the vaccine about two weeks ago (and, presumably, will receive his second dose in the near future), he cannot show that he needs to be released from prison to protect him from risks associated with COVID-19.").

Second, judges cannot evaluate the risks of severe disease to a particular person, vaccinated or not, without reliable evidence. District courts do not rely on guesswork and cannot perform their own medical research, at least not ordinarily. That is why so many federal district courts, including this court, have relied so heavily in the past year on judicially noticeable information published by public health authorities such as the U.S. Centers for Disease Control and Prevention, *see, e.g.*, *United States v. Meron*, No. 18-0209, 2020 WL 5257611, at *1 (E.D. Cal. Sept. 3, 2020), or the opinions of experts, when they are available, *see e.g.*, *Terraciano*, 492 F. Supp. 3d at 1083. When defendants argue they remain at risk against COVID-19 without citing reliable evidence, the resulting uncertainty is resolved against them given that they bear the burden of proof as the "party with an affirmative goal and presumptive access to proof." *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992); *see also, e.g.*, *United States v. Figueroa*, No. 09-00194, 2021 WL 1122590, at *5 (E.D. Cal. Mar. 24, 2021) (denying a motion for compassionate release because the defendant had not borne his burden of proof to show his medical conditions warranted release); *Becerra*, 2021 WL 535432, at *7 (same).

For the same reasons, courts have resolved uncertainties against defendants when they contend without evidence that a vaccine offers inadequate protection. *See, e.g.*, *Gomez-Vega*, 2021 WL 1339394, at *3 ("[A]bsent any evidence or argument combatting the efficacy of the vaccine's protection to mitigate his medical concerns, the Court is strained to accept that [the defendant's] conditions constitute extraordinary and compelling reasons for compassionate release."); *McQuarrie*, 2021 WL 843177, at *5 ("[A]bsent some authority to the contrary, this

---

*Grummer*, No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021); *United States v. Ballenger*, No. 16-5535, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021).

Court will not deem an underlying susceptibility to COVID-19 'extraordinary and compelling' where the movant is vaccinated against the disease and is not housed in a facility with a substantial outbreak."). Courts adopt the same approach when faced with uncertainties about whether vaccines protect against infections from new coronavirus variants. *See, e.g.*, *Kariblghossian*, 2021 WL 1200181, at *3 ("The Court acknowledges that the efficacy of the Pfizer vaccine against new virus variants continues to be studied and that it is possible that new, more resistant variants could emerge in the future. Nonetheless, at this time, the available scientific evidence suggests that the Pfizer vaccine is highly effective against known variants of the SARS-COV-2 virus that causes COVID-19."); *Singh*, 2021 WL 928740, at *3 ("While new variants of COVID-19 have emerged, the Moderna vaccine remains equally effective against many of the new variants and, although the vaccine is less effective against the B.1.351 variant, one study has shown that the Moderna vaccine still provides 'significant neutralization against the full B.1.351 variant following' vaccination." (citing Kai Wu, et al., "mRNA-1273 Vaccine Induces Neutralizing Antibodies Against Spike Mutants from Global SARS-CoV-2 Variants" bioRxiv Preprint Server (Jan. 25, 2021)[9])).

      These two considerations—scientific consensus that authorized vaccines are safe and effective, and the allocation of the burden of proof to defendants—have led some courts to conclude that a defendant's vaccination "precludes" arguments based on COVID-19 risks until there is some "shift in the scientific consensus." *See, e.g.*, *United States v. Wiley*, No. 14-0048, 2021 WL 1669523, at *2 (M.D.N.C. Apr. 28, 2021) (quoting *United States v. Smith*, No. 17-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021)). But a greater number of courts have been more circumspect, adopting what amounts to a rebuttable presumption that a vaccinated person is not at great risk of severe disease. As one district court recently wrote, for example, "there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk." *Harris*, 2021 WL 1516012, at *2; *see also, e.g.*, *Gomez-Vega*, 2021 WL 1339394, at *3 (denying compassionate release without prejudice to "evidence or argument combatting the

---

[9] https://www.biorxiv.org/content/10.1101/2021.01.25.427948v1.full, last visited May 10, 2021.

efficacy of the vaccine's protection to mitigate [the defendant's particular] medical concerns"). The rebuttable presumption approach fits this court's case-by-case evaluation of an analogous question: the risks of reinfection, as opposed to an initial infection. *See, e.g.*, *United States v. Fernandez*, No. 16-00115, 2020 WL 5909490, at *4–5 (E.D. Cal. Oct. 6, 2020) (finding that a defendant's asthma, chronic kidney disease, and obesity were extraordinary and compelling reasons to grant relief under § 3582(c)(1)(A) despite the defendant's recovery from a previous coronavirus infection).

Not all courts have approached vaccine uncertainties this way. At least two district courts have granted motions for compassionate release to defendants who were fully vaccinated, resolving uncertainties about vaccine effectiveness against the government. First, in *United States v. Sweet*, a 73-year-old defendant who suffered from chronic kidney disease and a history of smoking moved for compassionate release. *See* No. 07-20369, 2021 WL 1430836, at *2 (E.D. Mich. Apr. 15, 2021). He had previously contracted COVID-19 and had been hospitalized after experiencing oxygen deprivation and respiratory failure. *See id.* While he was in the hospital, he developed an irregular heartbeat. *See id.* After his recovery, he had received the Moderna vaccine. *Id.* The district court found that his health conditions and history supported his request for compassionate release. Although the court agreed "with the government that recovering from COVID-19 and being fully vaccinated decreases one's likelihood of severe COVID symptoms," it cited "recent data" showing "that the threat of severe illness or death from COVID-19, while diminished, is nevertheless real." *Id.* at *2. The court also cited reports from the Bureau of Prisons about inmates who had twice tested positive for COVID-19, and a news article reporting on initial statewide health data suggesting 246 vaccinated persons contracted COVID-19 and three of those persons died. *Id.* at *2–3.

In the second case, *United States v. Lonich*, the defendant, who was 63, suffered from prostate cancer, hypertension, high cholesterol, and sleep apnea. No. 14-00139, 2021 WL 1668062, at *1 (N.D. Cal. Apr. 28, 2021), *as amended* (N.D. Cal. May 4, 2021), ECF No. 1006. He had recovered from a previous case of COVID-19 and had been vaccinated. *See id.* at *3. The court granted the defendant's motion despite his vaccination and recovery because

"uncertainty still surrounds the degree and duration of protection vaccines provide against the virus or its mutations." *Id.* The court did not cite evidence to support its finding with respect to the effectiveness of vaccines, but did refer to *Sweet* and expert testimony from an infectious disease specialist who testified that reinfection is possible and more likely in a prison or jail. *Id.* The court also cited research showing that generally people between the ages of 65 and 74 "are 1,100 times more likely to die from infection than the age 5-17 reference group." *Id.* It is unclear whether this data accounts for vaccination or recovery from a previous infection. *See* U.S. Ctrs. for Disease Control & Prevention, "Risk for COVID-19 Infection, Hospitalization, and Death by Age Group" (Feb. 18, 2021).[10]

Having carefully considered the question, this court is not persuaded by the decisions in *Sweet* and *Lonich*. First, in neither case did the court cite or discuss conclusive data and research about vaccine effectiveness. Nor did those courts cite or distinguish any of the many decisions discussed above, in which dozens of other federal district courts have found that vaccination significantly reduces the risk of reinfection. Second, in both *Sweet* and *Lonich*, the courts leaned heavily on research about reinfection rather than vaccination, inferring essentially by analogy that this research was informative about the risks of vaccination. It is unclear to this court that this analogy is sound. Drawing the inference also relieved the defendants of their burden to offer "extraordinary and compelling reasons." Third, the evidence of risk to the defendants in both *Sweet* and *Lonich* was greater than the evidence here. In both cases, the defendants had more than one condition that put them at great risk of severe disease if infected. In *Lonich*, the defendant also relied on expert testimony. Here, by contrast, Smith claims only one medical condition that might increase his risk of severe disease (body mass index), and he has not submitted any expert testimony.

The court therefore adopts the rebuttable presumption that appears to be the emerging majority rule among federal district courts: if a defendant has received at least the first dose of an authorized vaccine and, if necessary, has scheduled a second dose as specified by the

---

[10] https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html, last visited Mar. 10, 2021.

manufacturer and authorized by the U.S. Food and Drug Administration, then the risk of severe harm from COVID-19 is not an "extraordinary and compelling" reason under § 3582(c)(1)(A)(i) unless the defendant offers evidence of an elevated personal risk despite vaccination. Smith has not shown his motion should be granted under this standard. He has received a first dose of an authorized vaccinate and has agreed to receive the second scheduled dose, and he has not provided evidence showing that his body mass index, race, or other characteristics put him at risk of severe COVID-19 despite his vaccination.

### B. Changes to 18 U.S.C. § 924(c)

Smith also argues that amendments to 18 U.S.C. § 924(c), the statutory basis for his firearms convictions, are "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). As summarized above, when Smith was sentenced, § 924(c) imposed mandatory minimum sentences for some successive firearms convictions, and the enhanced minimum sentences could not run concurrently with another minimum sentence, even if the two sentences were imposed in the same case. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020). Consecutive sentences imposed under § 924(c) are often called "stacked" sentences. *See id.* Smith's sentences were stacked in this way. His second firearms conviction carried a mandatory minimum twenty-year sentence that could not run concurrently with the five-year sentence for the first firearms conviction.

Many years after the prior district judge sentenced Smith, Congress amended § 924(c) in passing the First Step Act to clarify that the twenty-year enhancement described above applied only when the first conviction was "final" at the time the defendant committed the second offense. *See* First Step Act § 403(a), Pub. L. 115-391, 132 Stat. 5222 (2018). Although the First Step Act describes this amendment as a "[c]larification of section 924(c)," it is not retroactive. *See id.* § 403(b) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of the date of such enactment").

Although the amendments to § 924(c) were not made retroactive by Congress, many courts have held that if a defendant would have received a drastically lower sentence under the

11

amended statute, the difference may be an "extraordinary and compelling" reason warranting a sentencing reduction under § 3582(c)(1)(A)(i). *See, e.g.*, *McCoy*, 981 F.3d at 280–88; *United States v. Jones*, 482 F. Supp. 3d 969, 979–81 (N.D. Cal. 2020); *United States v. Haynes*, 456 F. Supp. 3d 496, 509–16 (E.D.N.Y. 2020). Their reasoning in persuasive. As the Ninth Circuit recently held, the Sentencing Commission has not issued any "applicable policy statements" for § 3582(c)(1)(A) motions filed by defendants. *Aruda*, 993 F.3d 802. "[A]s a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 801 (emphasis in original) (quoting *McCoy*, 982 F.3d at 284). And as several other federal courts have concluded, the First Step Act's changes to § 924(c) can provide an extraordinary and compelling reason to reduce an individual defendant's sentence despite Congress's decision not to make the amendments categorically retroactive. *See, e.g.*, *McCoy*, 981 F.3d at 286–87; *Haynes*, 456 F. Supp. 3d at 516; *Jones*, 482 F. Supp. 3d at 980–81.

As the government correctly notes, however, there is a split of authority on this question. *See* Opp'n at 10. In fact, another judge of this district recently rejected a defendant's argument that amendments to § 924(c) could provide "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). *See generally United States v. Rodriguez*, No. 01-5146, 2021 WL 637322 (E.D. Cal. Feb. 18, 2021). But that decision preceded the Ninth Circuit's intervening decision that the Sentencing Commission's guidance in U.S.S.G. § 1B1.13 is not binding, and rested primarily on reasoning inconsistent with that decision. *Compare id.* at *2 ("[T]his court will continue to assess whether a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission [in U.S.S.G. § 1B1.13].") *with Aruda*, 993 F.3d at 801 (holding that district courts may consider "*any* extraordinary and compelling reason for release that a defendant might raise" (emphasis in original) (citation omitted). Moreover, as the court explained in *Rodriguez*, even if it had considered the defendant's stacking argument, the result would have been the same: The defendant in that case had not actually received a "stacked" sentence. 2021 WL 637322, at *2. He argued only that the potential for stacking had influenced plea negotiations. *See id.*

After reviewing other courts' decisions to which the government points, the court is not persuaded by their reasoning. The argument these courts rely on most commonly is that granting a motion under § 3582(c)(1)(A) based on changes to § 924(c) would "supplant the retroactivity determination of courts . . . for the retroactivity determination of Congress" *United States v. Andrews*, No. 05-280, 2020 WL 4812626 (E.D. Pa. Aug. 19, 2020); *accord, e.g.*, *United States v. Fulcher*, No. 98-0119, 2020 WL 4547970, *2 (S.D. Ind. Aug. 5, 2020) ("If Congress intended to authorize courts to exercise discretion to apply [the First Step Act] retroactively to otherwise ineligible defendants, it would have included that amendment . . . . [The defendant] may not use 18 U.S.C. § 3582(c)(1)(A)(i)'s 'extraordinary and compelling' provision as an end-around to achieve a result that Congress did not intend."). But as the Fourth Circuit explained in *McCoy*, "there is a significant difference between automatic vacatur and resentencing of an entire class of sentences—with its 'avalanche of applications and inevitable resentencings'—and allowing for the provision of individual relief in the most grievous cases." 981 F.3d at 286–87 (quoting *Haynes*, 456 F. Supp. 3d at 516). "[T]he very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is *not* a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *Id.* at 287 (emphasis in original).

In conclusion, the court agrees with Smith that changes to § 924(c) can be one of any number of "extraordinary and compelling reasons" to grant a motion for compassionate release, if a defendant's individual characteristics support that finding. Here, they do. Smith was younger than twenty-five when he participated in the credit union robberies that led to his convictions and sentences and is older than fifty now. He has also served the vast majority of a sentence that would very likely have been much shorter if he had been sentenced under the clarified terms of § 924(c). His rehabilitation is clear from his prison files, which show he has completed extensive coursework, had only a minor disciplinary history, and is preparing to complete the final year of his sentence in a half-way house.

/////

**C. Sentencing Factors**

Smith's request for a reduction of his sentence under § 3582(c)(1)(A) can be granted only if the sentencing factors listed in § 3553(a) support that request to the extent the factors are applicable. *See* 18 U.S.C. § 3582(c)(1)(A). On balance, these factors support his motion.

Smith has served a lengthy sentence that reflects the seriousness of his offense, promotes respect for the law, and fulfills the need for "just punishment." 18 U.S.C. § 3553(a)(1), (a)(2)(A). Lengthy sentences such as the time Smith has served adequately deter "criminal conduct." *Id.* § 3553(a)(2)(B). He has received extensive "educational and vocational training" and "other correctional treatment" during his term, having completed his GED and extensive coursework to prepare to return to the working world. *Id.* § 3553(a)(2)(D). That education and training, when combined with his short record of relatively minor discipline in prison, fulfill the needs to "protect the public" and to "provide the defendant with needed education or vocational training" and "other correctional treatment." *Id.* § 3553(a)(2)(C), (a)(2)(D). And according to the Bureau of Prisons' records, he has completed his financial restitution obligations. *See* Summary Rep. at 2, 4; 18 U.S.C. § 3553(a)(7).

Smith's release plan reassures the court that the applicable sentencing factors weigh in his favor. He will stay with his parents, who are vaccinated against COVID-19, and who will help him find work and let him use their car. *See* Mot. at 14. His friends will also help him find work in the plumbing and HVAC fields, where he has training. *See id.* at 15. Smith will also remain subject to the terms of his five-year term of supervised release. At the court's request, the Probation Department reviewed Smith's proposed release plan and has advised the court his proposed residence is suitable with no need for an additional condition of home detention.

Finally, as discussed above, Smith's release will reduce rather than increase sentencing disparities; it is very likely that Smith would receive a much lower term if sentenced today.

**IV. CONCLUSION**

**The motion for compassionate release is granted.**

The court modifies Smith's sentence of incarceration to time served. All previously imposed conditions of supervised release remain in effect.

There being a verified residence and an appropriate release plan in place, this order is stayed for up to seven days for Smith to make appropriate travel arrangements, to receive his second dose of the Moderna vaccine, and for the Bureau of Prisons to ensure his safe release. Smith shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than seven days are needed to make appropriate travel arrangements and ensure Smith's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended. Upon release, Smith shall comply with all applicable public health orders.

This order resolves ECF No. 88 in case no. 96-cr-00450 and ECF No. 129 in case no. 98-00009.

IT IS SO ORDERED.

DATED: May 11, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE